UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES<br><br>v.<br><br>LUIS SALAMAN | No. 3:22-cr-76 (SRU) |

## ORDER ON OBJECTION TO SECTION 851 INFORMATION

Luis Salaman ("Salaman") objects to the government's information filed pursuant to 21 U.S.C. § 851 ("section 851 information").  Doc. No. 568.  Salaman argues that his prior felony conviction for attempted assault in the first degree by causing physical injury through the discharge of a firearm under Conn. Gen. Stat. §§ 53a-59(a)(5) and 53a-49(a)(2) is not a qualifying serious violent felony under 21 U.S.C. §§ 802(59) and 841.  The government opposes Salaman's objection, arguing that Salaman's prior felony conviction is a serious violent felony under both 18 U.S.C. § 3559(c)(2)(F)(ii) and 18 U.S.C. § 113(a)(3).  *See generally* Doc. No. 581.

For the following reasons, I **overrule Salaman's objection**.  I conclude that his prior conviction is a qualifying serious violent felony under the elements clause of 18 U.S.C. § 3559(c)(2)(F)(ii).  This order constitutes my findings of fact and conclusions of law regarding the section 851 information.

    **I.**    **Background**

On April 6, 2023, an eight-count superseding indictment charged Salaman with one count of conspiracy to distribute and to possess with intent to distribute at least 400 grams of a mixture and substance containing a detectable amount of fentanyl, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(vi).  Doc. No. 96 at 1-2.  Counts two through eight charged Salaman with

possession with intent to distribute and distribution of at least 40 grams of a mixture and substance containing a detectable amount of fentanyl, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(vi) and 18 U.S.C. § 2. *Id*. at 2-5.

Prior to trial, the government filed a notice of its intent to use Salaman's prior conviction for sentencing purposes pursuant to 21 U.S.C. § 851 ("section 851"). *See generally* Doc. No. 354. In its notice, the government asserted that Salaman was "convicted on a prior occasion of a serious violent felony, as defined in [21 U.S.C. § 802(59)], upon which the United States intends to rely."[1] Doc. No. 354 at 2. Specifically, Salaman "was convicted of attempted assault in the first degree, in violation of Conn. Gen. Stat. §§ 53a-59(a)(5) and 53a-49(a)(2)," for which he served "a term of imprisonment of more than 12 months." *Id*. *See also* Dkt. No. NNH-CR03-20833. The government's notice stated that, because Salaman was convicted of a serious violent felony before committing the offenses charged in the superseding indictment, under 21 U.S.C. § 851:

> (1) [S]hould the defendant be convicted of Count One of the Superseding Indictment, he would face a mandatory minimum term of imprisonment of 15 years, a maximum penalty of life imprisonment, a maximum fine of $20,000,000, and a term of supervised release of at least 10 years; and (2) should the defendant be convicted of any of Counts Two through Eight of the Superseding Indictment, he would face for each conviction a mandatory minimum term of imprisonment of 10 years, a maximum penalty of life imprisonment, a maximum fine of $8,000,000, and a term of supervised release of at least 8 years.

Doc. No. 354 at 2-3. *See* 21 U.S.C. § 846, 841(a)(1), 841(b)(1)(A)(vi), 841(b)(1)(B)(vi).

On December 19, 2024, a jury convicted Salaman of: count one, conspiracy to distribute and possess with intent to distribute at least 40 grams of a mixture or substance containing a detectible amount of fentanyl; count two, distribution and possession with intent to distribute at

---

[1] The government cited to 21 U.S.C. § 802(58) in the section 851 information. Doc. No. 354 at 2. However, a recent statutory amendment revised the applicable subsection to section 802(59). Pub.L. 118-189, § 1, Dec. 23, 2024, 138 Stat. 2652.

least 40 grams of a mixture or substance containing a detectible amount of fentanyl; count three, distribution and possession with intent to distribute at least 40 grams of a mixture or substance containing a detectible amount of fentanyl; and count five distribution and possession with intent to distribute at least 40 grams of a mixture or substance containing a detectible amount of fentanyl.  *See* Docs. No. 96, 499; 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B)(vi); 18 U.S.C. § 2.

After returning a guilty verdict, the jury received an additional charge instructing them to determine whether the government proved beyond a reasonable doubt three facts:

> 1) Whether Mr. Salaman has previously been convicted of first degree attempted assault; 2) Whether the term of imprisonment he served for any first degree attempted assault conviction exceeded 12 months; and 3) Whether any prior conviction for first degree attempted assault became final before the conviction of the current offenses.

Doc. No. 501 at 1.  The jury unanimously found in the supplemental verdict form that the government proved beyond a reasonable doubt that:  1) Salaman was convicted of first degree attempted assault in violation of Conn. Gen. Stat. §§ 53a-59(a)(5) and 53a-49(a)(2); 2) Salaman served more than twelve months in prison for that conviction; and 3) Salaman's conviction of first degree attempted assault became final before he committed the violations for which the jury found him guilty at the current trial.  Doc. No. 502 at 1-2.

Salaman filed an objection on March 21, 2025 to the government's second offender information pursuant to section 851.  *See generally* Doc. No. 568.  Salaman argues that his prior conviction for attempt to commit assault in the first degree is not a serious violent felony and, therefore, the section 851 enhancement is not applicable.  Doc. No. 568 at 1-2.  Salaman's sentencing is currently scheduled for November 12, 2025.  Doc. No. 627.

On September 3, 2025, I heard arguments on Salaman's objection to the government's section 851 information to establish a prior conviction (the "section 851 hearing").  *See* Doc. No. 626.  The parties then submitted additional briefing on questions raised during the section 851

hearing and submitted the *Shepard* documents from Salaman's prior felony conviction. *See generally* Docs. No. 626, 635-36, 640, 642.

## II.   Standard of Review

Section 851 provides the procedural requirements for the government in seeking an "increased punishment by reason of one or more prior convictions." 21 U.S.C. § 851(a). To seek an increased sentence, the government must "file[] an information with the court . . . stating in writing the previous convictions to be relied upon" before trial or entry of a guilty plea. *Id.* The court must "after conviction but before pronouncement of sentence inquire of the person . . . whether he affirms or denies that he has been previously convicted as alleged in the information."[2] *Id.* at § 851(b). The court must also inform the person that "any challenge to a prior conviction . . . not made before sentence is imposed may not thereafter be raised to attack the sentence." *Id.*

The person must challenge the prior conviction by filing a written response to the information. *Id.* at § 851(b)-(c). The court must hold a hearing "to determine any issues raised by the response which would except the person from increased punishment." *Id.* at § 851(c)(1). The hearing shall be held without a jury and both parties may introduce evidence. *Id.* The government bears the burden of proof beyond a reasonable doubt on any issue of fact. *Id.* Further, at either party's request, "the court shall enter findings of fact and conclusions of law." *Id.*

---

[2] Although I did not inquire of the defense directly, Salaman's objections during trial and timely filing of the objection to the section 851 notice rendered that inquiry unnecessary. *See United States v. Roman*, 464 F. App'x 32, 34-35 (2d Cir. 2012) ("The purpose of § 851(b) is to alert defendants of their right to challenge a second-offender enhancement. In this case, it is plain from the record that [the defendant] was fully aware of his rights under § 851 because . . . he exercised those rights by challenging the second-offender enhancement in his sentencing memorandum."); Doc. No. 561 at 20, 23-25 (arguing the section 851 notice is deficient).

If the court determines after the hearing that the person is subject to increased punishment due to prior convictions, the court proceeds to sentencing. *Id.* at § 851(d)(1). "If the court determines that the person [was not] convicted as alleged in the information," the conviction alleged in the information is invalid, or the person is not subject "to an increased sentence as a matter of law," the court shall postpone sentencing to allow the government to appeal if the government so requests. *Id.* at § 851(d)(2). Additionally, "[t]he person may appeal from an order postponing sentence as if sentence had been pronounced and a final judgment of conviction entered." *Id.*

Whether a certain offense counts as a "serious violent felony," as defined under a sentence-enhancing statute, is a question determined by the court. *United States v. Beardsley*, 691 F.3d 252, 257, 259 (2d Cir. 2012). "The government bears the burden of showing that a prior conviction counts as a predicate offense for the purpose of a sentencing enhancement." *Id.* at 257 (quoting *United States v. Savage,* 542 F.3d 959, 964 (2d Cir. 2008)) (internal quotation marks omitted). To interpret what constitutes a "serious violent felony," courts use a "categorical or modified categorical approach." *Beardsley*, 691 F.3d. at 259.

Courts use the categorical approach to determine whether a prior conviction may serve as a predicate offense under the elements clause of a statute. *United States v. Taylor*, 596 U.S. 845, 850 (2022) ("This Court has long understood similarly worded statutes [to 18 U.S.C. § 924(c)(3)(A)] to demand similarly categorical inquiries."). Under the categorical approach, courts "ask whether the offense in question 'always' involves the use, attempted use, or threatened use of force." *Delgatti v. United States*, 604 U.S. 423, 426 (2025) (quoting *Taylor*, 596 U.S. at 850). The modified categorical approach is appropriate when a prior conviction involves a "divisible statute" that "sets out one or more elements of the offense in the

alternative." *Descamps v. United States,* 570 U.S. 254, 257 (2013) ("[F]or example, stating that burglary involves entry into a building or an automobile."). When a statute is comprised of "multiple, alternative versions of the crime" courts are permitted "to examine a limited class of documents to determine which of a statute's alternative elements formed the basis of the defendant's prior conviction." *Id.* at 262. Those documents, also called "*Shepard* documents," include the charging document, terms of a plea agreement, transcript of a plea colloquy between the judge and defendant, and jury instructions. *Id.* at 257, 261; *Shepard v. United States*, 544 U.S. 13, 26 (2005); *Erlinger v. United States*, 602 U.S. 821, 839 (2024) (referring to *Shepard* documents as including "judicial records, plea agreements, and colloquies between a judge and the defendant").

### III. Discussion

For the sake of brevity and clarity, I address only the arguments remaining after the section 851 hearing and the parties' supplemental briefing.

Salaman argues that his prior conviction is not a serious violent felony under 18 U.S.C. §§ 113 or 3559(c)(2) because: (1) the analysis of whether Salaman was convicted of a serious violent felony must use the categorical approach as opposed to the modified categorical approach; (2) 18 U.S.C. § 113(a)(3) covers only completed assaults, not attempts; (3) "firearms" under state and federal law are not a categorical match; (4) attempt to commit assault is not categorically violent; (5) an attempt to commit a violent offense is not necessarily violent itself; and (6) the residual clause of 18 U.S.C. § 3559(c)(2)(F)(ii) is unconstitutionally vague.[3] *See* Doc. No. 568 at 5-19.

---

[3] I do not address this argument because the government does not argue that Salaman's prior conviction qualifies as a serious violent felony under the residual clause of 18 U.S.C. § 3559(c)(2)(F)(ii).

6

The government responds that Salaman's prior conviction satisfies the elements clause because the attempted assault at issue "plainly contains 'as an element the use, attempted use, or threatened use of physical force.'" Doc. No. 581 at 1 (quoting 18 U.S.C. § 3559(c)(2)(F)(ii)). The government also contends that, "independently, Salaman's prior conviction qualifies [as] an offense that would be an assault with a dangerous weapon under 18 U.S.C. § 113(a)(3)." Doc. No. 581 at 1.

      a. <u>Whether the analysis must use the categorical approach as opposed to the modified categorical approach</u>

Although the parties initially disagreed about whether the categorical or modified categorical approach applies to Salaman's prior conviction, both parties now argue the categorical approach applies to both the Connecticut assault and attempt statutes under which Salaman was charged. Doc. No. 568 at 5-7; Doc. No. 581 at 3-4; Doc. No. 635 at 1-3; Doc. No. 636 at 1-7. The parties assert that, under *Delligatti v. United States*, 604 U.S. 423 (2025), the "acts and omissions" in Conn. Gen. Stat. § 53a-49(a)(2) constitute a single, indivisible element of an offense. Doc. No. 635 at 1-3; Doc. No. 636 at 2, 9-11.

In *Delligatti*, the Supreme Court held that "[t]he knowing or intentional causation of injury or death, whether by act or omission, necessarily involves the use of physical force against another person." 604 U.S. at 439. Under *Delligatti*, the provision of the Connecticut attempt statute under which Salaman was convicted is indivisible. *See* Conn. Gen. Stat. 53a-49(a)(2) ("A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.").

In *Villaneuva v. United States*, the Second Circuit held that the first subdivision of the Connecticut first-degree assault statute was divisible and, therefore, the modified categorical approach applied. 893 F.3d 123, 128 (2d Cir. 2018) ("[T]he Connecticut first degree assault statute is divisible into subsections, and the modified categorical approach is therefore applicable."). However, the holding in *Villanueva* does not control the issue in this case, which specifically involves a conviction under section 53a-59(a)(5). The subsection at issue in *Villanueva*, section 53a-59(a)(1), contains the following language: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon *or* a dangerous instrument." 893 F.3d at 127 (emphasis added) (quoting Conn. Gen. Stat. § 53a-59(a)(1)). The modified categorical approach was appropriate because Connecticut state law provides different definitions for "deadly weapon" and "dangerous instrument," indicating there were "alternative means of committing first degree assault" under the section 53a-59(a)(1). *Villanueva v. United States*, 191 F. Supp. 3d 178, 191-92 (D. Conn. 2016), *vacated and remanded on other grounds*, 893 F.3d 123 (2d Cir. 2018).

The categorical approach applies to Conn. Gen. Stat. § 53a-59(a)(5) because that subsection does not "set[] out one or more elements of the offense in the alternative." *Descamps*, 570 U.S. at 257. There is only one way to commit first degree assault under section 53a-59(a)(5): by acting "with intent to cause physical injury to another person, [a defendant] causes such injury to such person or to a third person by means of the discharge of a firearm." Conn. Gen. Stat. § 53a-59(a)(5).

8

Therefore, I use the categorical approach to determine whether Salaman's prior conviction is a serious violent felony because the applicable provisions of the Connecticut assault and attempt statutes are not divisible.

> b. <u>Whether an attempted assault under Conn. Gen. Stat. §§ 53a-59(a)(5) and 53a-49(a)(2) qualifies as a "serious violent felony" under the elements clause of 18 U.S.C. § 3559(c)(2)(F)(ii)</u>

Salaman concedes that "[a] completed assault in the first degree in violation of § 53a-59(a)(5) is likely a serious violent felony." Doc. No. 568 at 13. *See Harris v. United States*, 2013 WL 3874474, at *4 (D. Conn. July 25, 2013), *aff'd*, 577 F. App'x 70 (2d Cir. 2014) (holding that assault in the first degree by discharge of a firearm in violation of Conn. Gen. Stat. § 53a59(a)(5) is a crime of violence under U.S.S.G. § 4B1.2(a) under both the categorical and modified categorical approach). However, Salaman argues that *attempted* assault "is not categorically violent" and is not a serious violent felony under section 3559(c)(2)(F)(ii). Doc. No. 568 at 13-15; Doc. No. 636 at 11-14. Salaman points to section 53a-49(b) of the Connecticut attempt statute to argue "[t]here are numerous ways to attempt to commit assault in the first degree under §§ 53a-59(a)(5) and 53a-49(a)(2) that do not involve force of any type." Doc No. 568 at 14 (providing as examples "[l]ying in wait, searching for or following the contemplated victim"); Conn. Gen. Stat. § 53a-49(b) (listing specific examples of conduct that cannot be held insufficient as a matter of law to constitute a substantial step).[4]

---

[4] Conn. Gen. Stat. § 53a-49(b)(2) provides that:
> Conduct shall not be held to constitute a substantial step under subdivision (2) of subsection (a) of this section unless it is strongly corroborative of the actor's criminal purpose. Without negating the sufficiency of other conduct, the following, if strongly corroborative of the actor's criminal purpose, shall not be held insufficient as a matter of law: (1) Lying in wait, searching for or following the contemplated victim of the crime; (2) enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission; (3) reconnoitering the place contemplated for the commission of the crime; (4) unlawful entry of a structure, vehicle or enclosure in which it is contemplated that the crime will be committed; (5) possession of materials to be employed in the commission of the crime, which are specially designed for such unlawful use or which can serve no

9

The government counters that "a conviction for attempted assault requires evidence that the defendant acted with the specific intent to physically injure the victim by discharging a firearm," thus satisfying the elements clause of section 3559(c)(2)(F)(ii).  Doc. No. 581 at 7.

Neither the Second Circuit nor a court in this district has determined whether a conviction for attempted assault under Conn. Gen. Stat. §§ 53a-59(a)(5) and 53a-49(a)(2) qualifies as a serious violent felony under 18 U.S.C. § 3559(c).  However, the Second Circuit considers cases interpreting "identical language of the elements clauses" in the Armed Career Criminal Act ("ACCA") and the career offender guideline as "highly persuasive."  *United States v. Tabb*, 949 F.3d 81, 84 (2d Cir. 2020).  In *Tabb*, the Second Circuit determined that attempted assault in the second degree under N.Y. Penal Law § 120.05(2) is categorically a crime of violence under the career offender guideline, U.S.S.G. § 4B1.2.  *Tabb*, 949 F.3d at 86.  The New York assault statute in *Tabb* clearly tracks section 53a-59(a)(5).  *Compare* N.Y. Penal Law § 120.05(2) ("With intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . .") *with* Conn. Gen. Stat. § 53a-59(a)(5) ("[W]ith intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of the discharge of a firearm.").

Salaman points to cases holding that attempted Hobbs Act robbery is not a serious violent felony to argue that attempted assault under Connecticut law is not categorically violent.  Doc. No. 568 at 14-16; Doc. No. 636 at 11-13.  *See United States v. Taylor*, 596 U.S. 845, 854, 859 (2022) (holding attempted Hobbs Act robbery does not qualify as a crime of violence under the

---

lawful purpose of the actor under the circumstances; (6) possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, where such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances; (7) soliciting an innocent agent to engage in conduct constituting an element of the crime.

elements clause of 18 U.S.C. § 924(c)(3)(A)); *United States v. Halliday*, 511 F. Supp. 3d 205, 211 (D. Conn. 2021) ("A Hobbs Act robbery may be committed merely by *threatening* to use physical force. . . . The force clause does not further extend to *attempts to threaten* to use physical force . . . .") (emphasis in original); *FNU LNU v. United States*, 2020 WL 5237798, at *7 (S.D.N.Y. Sept. 2, 2020) ("For these reasons, the Court finds that attempted Hobbs Act robbery, the predicate crime for Petitioner's section 924(c)(3)(A) conviction, is not a 'crime of violence' within the meaning of the Elements Clause."). *Cf. United States v. Alfonso*, 2019 WL 1916199, at *3 (D. Conn. Apr. 30, 2019) (holding attempted first degree robbery under Connecticut law is not a crime of violence under U.S.S.G. § 4B1.2(a)(2) because "the elements of attempt to commit robbery could clearly be met without any use, attempted use, or threatened use of violence whatsoever.").

        The Second Circuit has distinguished Hobbs Act robbery from other crimes by reasoning that "attempted Hobbs Act robbery can be committed through the *attempted threat of force* – which need not involve the use, attempted use, or threatened use of physical force." *United States v. Pastore*, 83 F.4th 113, 121 (2d Cir. 2023) (emphasis in original) (internal citation and quotation marks omitted). *See also* 18 U.S.C. § 1951(b)(1) ("The term 'robbery' means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force . . . ."). The same logic applies to the Connecticut robbery statute, which requires "us[ing] or threaten[ing] the immediate use of physical force upon another person." Conn. Gen. Stat. § 53a-133. Analogously, first degree assault under Connecticut law cannot be committed by the "threat" to cause injury—completed rather than attempted first degree assault requires causing an intended injury to another person or a third person. *See* Conn. Gen. Stat. § 53a-59(a)(5) ("[W]ith intent to cause physical injury to

another person, he causes such injury to such person or to a third person by means of the discharge of a firearm.").

Determining whether Salaman's prior conviction was a crime of violence requires ascertaining whether an attempted assault under sections 53a-59(a)(5) and 53a-49(a)(2) includes an element requiring the use, attempted use, or threatened use of force. *See* 18 U.S.C. § 3559(c)(2)(F)(ii) (defining a serious violent felony as an offense "that has as an element the use, attempted use, or threatened use of physical force against the person of another").

The elements of assault under Conn. Gen. Stat. § 53a-59(a)(5) are: (1) the defendant had the specific intent to cause physical injury to another person, (2) the defendant did cause physical injury to that person or a third party, and (3) the defendant caused the injury by means of the discharge of a firearm. *See* Conn. Gen. Stat. § 53a-59(a)(5); Conn. Jud. Branch Crim. Jury Instr. 6.1-5 (modified May 23, 2013), https://jud.ct.gov/ji/criminal/criminal.pdf. The Connecticut attempt statute requires a person "act[] with the kind of mental state required for commission of the crime[.]" Conn. Gen. Stat. § 53a-49. Specifically, Salaman was convicted of attempt by "intentionally do[ing] or omit[ting] to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." Conn. Gen. Stat. § 53a-49(a)(2). *See* Doc. No. 642-1 at 1 (listing conviction under Conn. Gen. Stat. §§ 53a-49(a)(2) and 53a-59(a)(5)).

The combined elements of "attempt" and "assault" under Connecticut state law are: (1) the defendant had the specific intent to cause physical injury to another person by means of the discharge of a firearm; and (2) the defendant intentionally did or omitted to do anything that, under the circumstances as he believed them to be, was an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the assault.

12

*See* Conn. Gen. Stat. §§ 53a-49(a)(2) and 53a-59(a)(5)); Conn. Jud. Branch Crim. Jury Instr. 3.2-2 (modified Nov. 17, 2015; Nov. 10, 2021), https://jud.ct.gov/ji/criminal/criminal.pdf.  Further,

> To be a substantial step, the conduct must be strongly corroborative of the defendant's criminal purpose.[] The act or acts must constitute more than mere preparation. The defendant's conduct must be at least the start of a line of conduct that will lead naturally to the commission of [assault]. In other words, it must appear to the defendant that it was at least possible that the [assault] could be committed if he continued on his course of conduct.

Conn. Jud. Branch Crim. Jury Instr. 3.2-2 (modified Nov. 17, 2015; Nov. 10, 2021), https://jud.ct.gov/ji/criminal/criminal.pdf.

"[T]he knowing or intentional causation of bodily injury necessarily involves the use of physical force."  *United States v. Castleman*, 572 U.S. 157, 169-70 (2014) ("It is impossible to cause bodily injury without applying force in the common-law sense.").  *See also Johnson v. United States*, 559 U.S. 133, 140 (2010) ("We think it clear that in the context of a statutory definition of 'violent felony,' the phrase 'physical force' means violent force—that is, force capable of causing physical pain or injury to another person.") (emphasis omitted); *Delligatti v. United States*, 604 U.S. 423, 439 (2025) ("The knowing or intentional causation of injury or death, whether by act or omission, necessarily involves the use of physical force against another person.").

The assault and attempt statutes under which Salaman was convicted indisputably contain an element involving the use or attempted use of force.  *See* Conn. Gen. Stat. §§ 53a-49(a)(2) (defining attempt), 53a-59(a)(5) ("[W]ith intent to cause physical injury to another person, he causes such injury . . . .").  Under the categorical approach, Salaman's attempted assault conviction is a "serious violent felony" as defined by 18 U.S.C. § 3559(c)(2)(F)(ii) because it required Salaman to have acted with the specific intent to cause physical injury to another person and to have "intentionally do[ne] or omit[ted] to do anything which, under the circumstances as

13

he believe[d] them to be, [was] an act or omission constituting a substantial step in a course of conduct planned to culminate in" causing injury to that person or a third person by discharging a firearm. Conn. Gen. Stat. §§ 53a-49(a)(2), 53a-59(a)(5). The Supreme Court has held that intentionally causing a physical injury necessarily involves the use of physical force. *See Castleman*, 572 U.S. at 169. Therefore, attempting to commit assault under section 53a-59(a)(5) necessarily involves an "act or omission" done with the intent to cause physical injury through the use or attempted use of physical force. Conn. Gen. Stat. §§ 53a-49(a)(2), 53a-59(a)(5). *See* 18 U.S.C. § 3559(c)(2)(F)(ii).

Section 53a-59(a)(5) covers assaults committed "by means of the discharge of a firearm." Conn. Gen. Stat. § 53a-59(a)(5). Salaman argues that Connecticut's statutory definition of a firearm is broader than the federal definition and that Salaman could have been convicted of attempted assault under sections 53a-59(a)(5) and 53a-49(a)(2) without discharging what federal law defines as a firearm. Doc. No. 568 at 10-12; Doc. No. 587 at 3-4. However, the phrase "by means of the discharge of a firearm" is not the controlling element under the elements clause of section 3559(c)(2)(F)(ii). Conn. Gen. Stat. § 53a-59(a)(5). Instead, the relevant analysis is whether the offense contains "an element [involving] the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 3559(c)(2)(F)(ii). Under section 3559(c)(2)(F)(ii), the operative element in an attempted assault conviction under sections 53a-59(a)(5) and 53a-49(a)(2) is not "by means of the discharge of a firearm," but instead the "intent to cause physical injury to another person." Conn. Gen. Stat. § 53a-59(a)(5). The attempt to cause physical injury to another person, not the discharge of a firearm, is what makes Salaman's prior felony conviction a serious violent felony.

14

Salaman at most shows that the definition of "firearm" under Connecticut law can include a BB gun. *See* Doc. No. 568 at 11-12; Conn. Gen. Stat. § 53a-3(19). Assault by means of the discharge of a BB gun with the intent to cause physical injury would still satisfy the use of physical force requirement. Thus, section 53a-59(a)(5) is categorically a crime of violence despite the Connecticut statute more broadly defining "firearm" than the federal statute. *Cf. United States v. Walker*, 442 F.3d 787, 788 (2d Cir. 2006) ("To (attempt to) cause physical injury by means of a deadly weapon or dangerous instrument is necessarily to (attempt to) use 'physical force,' on any reasonable interpretation of that term, *and* necessarily creates 'a serious potential risk of physical injury to another.'" (addressing N.Y. Penal Law § 120.05(2)) (emphasis in original)).

Additionally, Salaman contends that Conn. Gen. Stat. § 53a-49(b) describes ways to commit attempted assault without using force. Doc. No. 568 at 13-14. Section 53a-49(b) is not dispositive of the categorical inquiry because Salaman was not convicted under that subsection and it does not define the elements of attempted assault. Instead, section 53a-49(b) merely requires conduct constituting a substantial step to be "strongly corroborative of the actor's criminal purpose" and lists conduct that "shall not be held insufficient as a matter of law" to do so. Conn. Gen. Stat. § 53a-49(b).

Accordingly, I **overrule** Salaman's objection to the section 851 information on the basis that attempted assault under Conn. Gen. Stat. §§ 53a-59(a)(5) and 53a-49(a)(2) constitutes a serious violent felony under the elements clause of 18 U.S.C. § 3559(c)(2)(F)(ii).

      c. <u>Whether Conn. Gen. Stat. § 53a-59(a)(5) qualifies as a "serious violent felony" under 18 U.S.C. § 113(a)(3)</u>

The government argues that Salaman's prior conviction also qualifies as a serious violent felony under 18 U.S.C. § 113(a)(3) because attempted assault under Conn. Gen. Stat. § 53a-

15

59(a)(5) is a completed assault under common law.  Doc. No. 581 at 9-10.  *See* 18 U.S.C. § 113(a)(3) ("Whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished as follows: . . . [a]ssault with a dangerous weapon, with intent to do bodily harm, by a fine under this title or imprisonment for not more than ten years, or both.").  Salaman asserts that the plain language of section 113(a)(3) does not apply to *attempted* assaults and Congress intended to exclude attempt liability from that provision.  Doc. No. 568 at 8-9 (citing *United States v. Pristell*, 941 F.3d 44, 52 (2d Cir. 2019)) ("[T]he presumption of consistent usage and meaningful variation, and the textual canon of *expressio unius est exclusio alterius*, suggest that the presence of a phrase applicable to one factor makes clear that the phrase's omission elsewhere was deliberate." (alterations adopted) (internal citation and quotation marks omitted)).

Neither party points to a decision in which a court relied upon section 113(a)(3) to interpret a prior state conviction of attempted assault as a serious violent felony, as defined in 21 U.S.C. § 802(59).  Doc. No. 635 at 4 ("[T]here is virtually no case law on whether a prior conviction would qualify as a serious violent felony under 21 U.S.C. § 802(59)(B).").  *See generally* Docs. No. 568, 587, 640.  The Second Circuit is silent on whether section 113 can be interpreted to cover a prior state law conviction used to enhance a sentence.  I find it unnecessary to wade into this murky area of law because neither party identifies controlling authority and because Salaman's prior conviction constitutes a serious violent felony under 18 U.S.C. § 3559(c)(2)(F)(ii).

      d. <u>Whether an enhanced section 851 sentence cannot be imposed because the information contained the incorrect date of final judgment for Salaman's prior conviction</u>

Lastly, Salaman argues that the government's section 851 information did not provide him with the statutorily required notice.  Doc. No. 636 at 14-15.  Specifically, Salaman alleges

16

that because the date the conviction became final, and the date the jury was instructed to consider, was different than the date in the section 851 notice, the information was "constructive[ly] amend[ed]" and deprived him of the required notice.[5]  *Id.* at 14-15.  Salaman raised a similar objection to the 851 information during trial.  Doc. No. 561 at 23-24.

The date of conviction listed on the section 851 information was September 10, 2004.  Doc. No. 354 at 2.  However, during trial, I took judicial notice and instructed the jury that November 29, 2006 was the date the conviction became final, because that was the date the Connecticut Supreme Court denied Salman's certification petition.  Doc. No. 561 at 24-25 (taking judicial notice of the Connecticut Supreme Court reporter Volume 280, page 942, *State of Connecticut v. Luis A. Salaman*); *id.* at 46, 50-51 (instructing the jury that Salaman's prior conviction, "assuming it occurred, became final on November 29, 2006").

"Failure to adhere to the letter of [section] 851's procedures does not automatically invalidate the resulting sentence."  *United States v. Espinal*, 634 F.3d 655, 665 (2d Cir. 2011).  "[T]here is no reason why non-prejudicial errors in complying with the procedural requirements of [section] 851 should require reversal."  *Id.*  However, where "the failure to follow the statutory procedure compromised the reliability and thoroughness" of the section 851 hearing, vacating a sentence and remanding is warranted.  *Id.* at 666-67.

The date on the section 851 information, September 10, 2004, did not fail to provide Salaman proper notice and did not prejudice his ability to deny the government's allegation of his prior conviction or otherwise challenge the prior conviction.  The government's notice provided the docket number and the offense for which Salaman was convicted.  *See* Doc. No.

---

[5] The only case Salaman cites in support of this argument is an Eighth Circuit case addressing whether a section 851 information was timely filed, which is not at issue here.  *United States v. Johnson*, 944 F.2d 396, 407 (8th Cir. 1991) ("[S]ection 851 requires filing before jury selection begins.").

17

354 at 2 ("On September 10, 2004, in the Superior Court of the State of Connecticut, Docket Number NNH-CR03-20833, the defendant Luis Salaman was convicted of attempted assault in the first degree, in violation of Conn. Gen. Stat. §§ 53a-59(a)(5) and 53a-49(a)(2), an offense for which the defendant served a term of imprisonment of more than 12 months."). Even though the date in the information was the date on which the Connecticut Superior Court entered judgment rather than the date the conviction became final, the section 851 notice adequately "stat[ed] in writing the previous conviction[] to be relied upon." 21 U.S.C. § 851(a)(1); Doc. No. 642-1 at 1 (listing the date of disposition as September 10, 2004). The date of conviction listed in the section 851 information is more akin to a "clerical error" that "may be amended at any time prior to the pronouncement of sentence." 21 U.S.C. § 851(a).

Accordingly, I hold the government's section 851 information did not deprive Salaman of adequate notice and did not compromise "the reliability and thoroughness" of the section 851 hearing. *See Espinal*, 634 F.3d 665-67. Additionally, I direct the government to promptly file an amended section 851 information stating the date that Salaman's conviction became final: November 29, 2006.

### IV.     Conclusion

For the reasons discussed above, I **overrule** Salaman's objection to the government's section 851 notice on the ground that attempted assault under Conn. Gen. Stat. §§ 53a-59(a)(5) and 53a-49(a)(2) is a serious violent felony under the elements clause of section 3559(c)(2)(F)(ii). I direct the government to file an amended section 851 information listing November 29, 2006 as the date that Salaman's conviction became final.

So ordered.

Dated at Bridgeport, Connecticut, this 29th day of October 2025.

                <u>/s/ STEFAN R. UNDERHILL</u>
                Stefan R. Underhill
                United States District Judge